UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DENISE KAY REIMERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:16cv385 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Social Security Income as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act

through December 31, 2014.

2. The claimant has not engaged in disqualifying work activity since December 4, 2009, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: back pain due to degenerative changes, history of chronic obstructive pulmonary disease with periodic exacerbation, history of smoking, degenerative joint disease of the bilateral feet requiring bunionectomy of the right foot and left foot, bipolar disorder/depression, anxiety disorder, posttraumatic stress disorder, and obsessive-compulsive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment, or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) and 416.967(b)(i.e. lifting, carrying, pushing, and pulling up to 20 pounds occasionally and 10 pounds frequently; sitting up to at least six out of eight hours in an eight hour workday; and standing/walking, in combination, up to at least six out of eight hours in an eight hour workday) with the following additional limitations: she requires a sit/stand option (which allows for alternating between sitting and standing up to every 30 minutes, if needed, but the positional change will not render the individual off task). She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme cold, heat, humidity, wetness, and pulmonary irritants (i.e. fumes, odors, dust, gases, poorly ventilated areas, and chemicals). Mentally, the claimant cannot understand, remember, or carry out detailed or complex job instructions, but can perform simple, repetitive tasks on a sustained basis (meaning eight hours a day/5 days a week, or an equivalent work schedule). She cannot tolerate sudden or unpredictable workplace distractions. She needs work at a flexible pace (where the employee is allowed some independence in determining either the timing of different work activities or pace of work) with no strict production pace standards. She can tolerate only casual/superficial interactions with others, including supervisors, coworkers, and the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 29, 1961 and was 48 years old, which is

3

defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 21- 32)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on May 9, 2017. On August 17, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test

as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff applied for disability insurance benefits and supplemental security income in January 2013, alleging a disability onset date of December 4, 2009 (Tr. 19, 249-63). The state disability determination service denied Plaintiff's applications initially and on reconsideration (Tr. 106, 121, 136, 151), and Plaintiff requested a hearing before an ALJ (Tr. 202). After hearing testimony at a February 2015 hearing from Plaintiff, who was represented by an attorney, from Plaintiff's daughter, and from a vocational expert (Tr. 45-105), the ALJ issued a written decision denying Plaintiff's applications in May 2015 (Tr. 19-32). The Appeals Council denied Plaintiff's request for review (Tr. 1-3). This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff was 48 years old on the alleged onset date of disability. Plaintiff completed her GED and cosmetology school. She returned to the work force after her coccyx injury in 1998 and worked for eight years. As her pain and other medical difficulties worsened, her work tapered in

5

the four years prior to her alleged onset of disability date. Plaintiff believes that her jobs as a hairdresser and as a worker in a chemical food processing plant exposed her to toxic contaminants that may have contributed to her allergy and breathing problems. Plaintiff had past relevant work as a cashier II [Dictionary of Occupational Titles (DOT) 211.462-010], Specific Vocational Preparation (SVP) level 2, light exertional level per DOT and medium as performed; home health aide (DOT 354.377-014), SVP-3, medium per DOT and heavy as performed; quality control (DOT 609.684-010), SVP-4, light per DOT and light as performed.

The ALJ found the following severe physical impairments: degenerative disk disease with back pain; chronic obstructive pulmonary disease; degenerative joint disease of the feet post-bilateral bunionectomies. The ALJ also found the following severe mental impairments: bipolar disorder; depression; anxiety disorder; post-traumatic stress disorder; and obsessive compulsive disorder.

Plaintiff testified that her manic cycles came about twice a year in six day and night stretches where she could not sleep. These cycles were then followed by a period of exhaustion that would allow sleep. According to Plaintiff, the consultative psychological examiner concluded that she would have difficulties maintaining work attendance during manic phases and that she would have sporadic complications and focus problems secondary to the PTSD.

Plaintiff claims that the combination of her pain medications and her mental health medications led to drowsiness and required about an hour and a half nap per day. The ALJ found the following impairments non-severe: right comminuted impacted fracture of the distal right radius with mild dorsal displacement and dorsal angulation post-open reduction and internal fixation; dysphonia- bilateral vocal polyps post-microsuspension laryngoscopy and

polypectomies; left shoulder lipoma post-lipomectomy.

Plaintiff also alleges she suffers from the following additional impairments: osteoporosis; cervical spine C4 C5 anterolisthesis; chronic mild L1 compression fracture; coccyx fracture; left wrist deep laceration injury; left thumb laceration; left arm cellulitis; migraine headache; gout; hypertriglyceridemia; hypertension; gastroesophageal reflux disease, peptic ulcer disease, mild gastritis of the greater curvature, multiple small ulcers in the fundus, and mild to moderate distal esophagitis.

On August 20, 2013, a Medicaid Administrative Law Judge from the Indiana Family and Social Services Administration found the Plaintiff disabled pursuant to Indiana Code 12-14-15-1 due to chronic coccygeal back pain and shortness of breath. Plaintiff asserts that the disability standard in I.C. 12-14-15-1 is nearly identical to Social Security Act definition of disability at 42 U.S.C. sec. 423(d)(l)(A). Plaintiff further asserts that the Medicaid ALJ found the Plaintiff credible.

In support of remand, Plaintiff first argues that the ALJ improperly weighed the consultative psychological examiner's opinion. However, as the Commissioner notes, the ALJ credited every medical opinion in the record, except for Dr. Fervida's GAF score, in assessing Plaintiff's functional limitations. The ALJ gave significant weight to the opinions of Drs. Brill and Sands, who reviewed the record and assessed Plaintiff's physical functional abilities, and to the opinions of Drs. Hill and Horton, who reviewed the record and assessed Plaintiff's mental functional abilities, in assessing Plaintiff's RFC (Tr. 29-30). This is consistent with the regulations, which recognize that state agency reviewing physicians and psychologists are highly qualified experts in Social Security disability evaluation. *See* 20 C.F.R. § 404.1527(e)(2)(i). The

ALJ also credited the opinion of Dr. Fervida, the consultative psychologist who examined Plaintiff, except, as noted, he gave only some weight to Dr. Fervida's GAF score (Tr. 28, 30). A review of the record shows that the ALJ reasonably relied on the medical opinions of record in assessing Plaintiff's RFC. Moreover, there are no medical opinions endorsing functional limitations beyond those the ALJ assessed.

The ALJ's reliance on the uncontroverted medical opinions is itself sufficient reason to uphold the ALJ's decision. An ALJ may rely on opinions from reviewing medical sources when no other medical sources contradict those opinions. *Filus v. Astrue*, 694 F.3d 863, 867 (7th Cir. 2012). An ALJ may rely on a reviewing physician's opinion regarding a claimant's functional limitations when "no doctor ever suggested that any greater limitation was required." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803 (7th Cir. 2005). Despite Plaintiff's assertions of limitations, there are no medical opinions in the record endorsing specific functional limitations beyond those the ALJ included in the RFC assessment.

The ALJ gave significant weight to the opinions of Drs. Brill and Sands, the physicians who reviewed the record for the state disability determination service, that Plaintiff could perform a range of light work with occasional to frequent postural limitations and no concentrated exposure to some environmental irritants despite her impairments (Tr. 24, 113-15, 144-46). The ALJ's RFC assessment was consistent with the opinions of Drs. Brill and Sands, except that the ALJ gave Plaintiff an option to sit/stand every 30 minutes and provided more restrictive postural limitations in order to further accommodate Plaintiff's subjective complaints (Tr. 29; compare Tr. 24 with Tr. 113-15, 144-46). Plaintiff has not challenged the ALJ's reliance on the medical opinions regarding her physical abilities, and consequently has waived any such challenge. *See*

*Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (issues not raised in initial district court brief are waived).

From a mental perspective, the ALJ gave significant weight to the opinions of Drs. Hill and Horton, the psychologists who reviewed the record for the state disability determination service (Tr. 29-30, 112, 115-17, 142-43, 146-48). The ALJ assessed an RFC that was more favorable to Plaintiff, including restricting her to jobs allowing for flexible pace (Tr. 24, 29-30), and his RFC assessment included restrictions on complex and detailed instructions, workplace changes, and social interaction that was wholly consistent with the expert opinions of Drs. Hill and Horton (compare Tr. 24 with Tr. 115-17, 146-48).

Plaintiff challenges only the ALJ's assessment of the opinion of Dr. Fervida, the consultative psychologist). Unlike treating source opinions, the regulations afford no special significance to examining source opinions; they are weighed under the regulatory factors just like any other opinion. *See* 20 C.F.R. § 404.1527(c). "As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). However, an ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record . . . ." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In the present case, as noted, the ALJ credited Dr. Fervida's opinion, apart from finding that Dr. Fervida's GAF score was inconsistent with his evaluation findings and subsequent evidence that documented improvement in the claimant's mental functioning (Tr. 30). Clearly, the functional limitations the ALJ assessed in determining Plaintiff's RFC are consistent with Dr. Fervida's opinion. Dr. Fervida opined that Plaintiff would likely have "great difficulty . . .

functioning in work settings where there are multiple people" (Tr. 540). He also opined that she would have difficulty in social interactions due to breathing problems (Tr. 540). Thus, the ALJ restricted Plaintiff to only occasional work in close proximity to others and to only superficial interactions with supervisors, coworkers, and the general public (Tr. 24). Dr. Fervida opined that Plaintiff would have sporadic complications when manic episodes occurred or past trauma is triggered, and "[a]t such times" it would be difficult for her to focus and might result in absences when mania was severe (Tr. 540). Dr. Fervida also opined that while Plaintiff had good understanding, average short- and long-term memory, and average frustration tolerances, she had poor concentration (Tr. 540). The ALJ restricted Plaintiff to no detailed or complex job instructions; no sudden or unpredictable workplace changes; only work at a flexible pace that Plaintiff had independence in controlling; and no strict production pace standards (Tr. 24). Notably, Plaintiff does not identify any limitations Dr. Fervida endorsed that the ALJ did not account for in the RFC assessment. To the extent that the ALJ gave greater relative weight to the opinions of Drs. Hill and Horton—who reviewed and credited Dr. Fervida's evaluation and opinion (see Tr. 112, 143)—the ALJ acted within his discretion in doing so. *See Kleven v. Colvin*, 675 F. App'x 608, 611 (7th Cir. Jan. 11, 2017).

In discounting Dr. Fervida's GAF score, the ALJ noted that Plaintiff did not begin mental health treatment until July 2013, and while she was briefly hospitalized in October 2013 after an emotional breakdown that followed her brother's death, subsequent examinations noted considerable improvement in her mental symptoms and status (Tr. 28-29, 635-38). By November 2013, the ALJ noted, Plaintiff was pleasant with only mild agitation and mildly impaired attention (Tr. 29, 923), and by December, her mood was "fairly bright" and she was less "worried, more

10

active, and less depressed" (Tr. 29, 921-22). Plaintiff's improvement with treatment continued, as she was observed as in a "pretty good" mood and doing well in February 2014, and "functioning better" with improved participation and activities of daily living and a GAF of 58—indicating moderate symptoms—in February 2015 (Tr. 29, 886-87, 891-92, 919). It was clearly reasonable for the ALJ to consider this evidence in assessing Plaintiff's mental allegations and subjective reports of symptoms. *See* SSR 16-3p, 20 C.F.R. § 404.1529(c)(3). The only portion of Dr. Fervida's opinion that the ALJ discounted was his GAF score, and the ALJ provided good reasons for doing so. Tr. 30 (finding Dr. Fervida's GAF score inconsistent with his examination findings and subsequent evidence documenting improvement in mental functioning with treatment).

Next, Plaintiff claims that the ALJ erred in not considering all impairments when determining Plaintiffs RFC. Plaintiff also contends that the ALJ placed too much emphasis on Plaintiff's activities of daily living. However, in addition to relying on the uncontradicted medical opinions of record, the ALJ explained why he was discounting Plaintiff's allegations of disabling limitations. An ALJ's assessment of a claimant's allegations is "entitled to special deference because the ALJ has the opportunity to observe the claimant testifying." *Jones v. Comm'r of Soc. Sec.*, 623 F.3d 1155, 1160 (7th Cir. 2010); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The Seventh Circuit will reverse "only if [it is] patently wrong." *Jones*, 623 F.3d at 1160. In the present case, Plaintiff has not shown that the ALJ's assessment of his allegations was patently wrong.

SSR 96-8p spells out what the ALJ must include in his RFC analysis. It requires a narrative discussion of the record evidence and an explanation as to how the evidence supports

the ALJ's RFC findings. *See* SSR 96-8p, 1996 WL 374184, at *7. It also provides that the ALJ's RFC analysis must discuss the claimant's symptoms and the medical source opinions. *Id*. In this case, the ALJ complied with this ruling and provided a detailed discussion of the medical and nonmedical evidence with an explanation of how he considered that evidence in assessing Plaintiff's RFC (see Tr. 24-30).

In finding that the claimant's history of a 2009 right wrist fracture was not a severe impairment, the ALJ noted that the treatment records did not document any residual symptoms from that injury (Tr. 22). Specifically, the ALJ noted that the March 2013 consultative examination did not mention any right hand problems (Tr. 22, 499-502). The record supports this finding, as Dr. Kamineni diagnosed no right hand problems (Tr. 502), and indicated that Plaintiff had no vascular problems in the arms, normal muscle strength, normal grip strength, no muscle pain, and normal movement of joints (Tr. 501). Plaintiff also had a normal range of motion in the wrist (Tr. 503)("All areas left blank are normal"). Clearly, the ALJ fully explained why he did not include wrist-related restrictions in the RFC assessment. The ALJ acknowledged and addressed Plaintiff's allegation that she still had problems using her right hand for pushing and holding objects (Tr. 28). The ALJ found that there were no such complaints in the medical records, and no corresponding signs or findings related to any right hand or wrist impairment (Tr. 28). Notably, Plaintiff identifies no evidence to contradict the ALJ's finding. Plaintiff bore the burden of proof and cites no evidence to rebut the medical opinions, and this Court will not "play doctor to save plaintiff's case." *Domingue v. Berryhill*, No. 15-cv-50191, 2017 WL 1427055, at *4 (N.D. Ill. Apr. 21, 2017).

Plaintiff's allegation that the ALJ did not account for her balancing limitation is similarly

unavailing. As this Court noted in *Thomas*, SSR 96-9p defines balancing as "maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces." SSR 96-9p; see *Thomas v. Berryhill*, No. 16-cv-287, 2017 WL 2492627, at *7-8 (N.D. Ind. June 8, 2017). Thus, there is no inconsistency between the ALJ's finding that Plaintiff could perform light exertional work and his finding that she could occasionally balance. The ALJ was required to incorporate only those limitations that he accepted as credible in his hypotheticals to the vocational expert. *Schmidt*, 496 F.3d at 845-46. Even if Plaintiff had established that she was unable to balance sufficiently to perform light exertional work, the vocational expert identified a significant number of jobs that Plaintiff could perform even if she were limited to sedentary work—involving a less than occasional ability to stand and/or walk (See Tr. 31-32, 96-97). Plaintiff did not challenge the VE's testimony that she was capable of performing a range of sedentary work despite her balancing limitations, and she has waived any such challenge. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Thomas*, 2017 WL 2492627, at *7-8.

Finally, Plaintiff notes that the Seventh Circuit has criticized ALJ decisions that place too much emphasis on a claimant's daily activities without recognizing the difference between such activities and sustained work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). However, in the present case the ALJ did not unduly emphasize Plaintiff's activities or conflate them with competitive work, but rather considered them along with the other relevant regulatory factors in assessing her allegations. This is proper, as the regulation requires that an ALJ consider daily activities along with the other credibility factors. *See* 20 C.F.R. § 404.1529(c)(3)(i). *See also Lewis v. Comm'r of Soc. Sec.*, No. 12-241, 2013 WL 4670202, at *7 (N.D. Ind. 2013). In fact, the

ALJ was required to consider Plaintiff's retained daily activities as one factor in assessing her subjective allegations of symptoms. *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. Sept. 1, 2016); *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. Jan. 13, 2016). To the extent that the ALJ did not separately discuss every condition Plaintiff reported with respect to her performance of daily activities, he was not required to do so. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (ALJ need not provide a complete written evaluation of every piece of testimony and evidence).

Accordingly, as substantial evidence supports the ALJ's decision, it must be affirmed.

## Conclusion

On the basis of the foregoing, the ALJ's decision is hereby AFFIRMED.

Entered: October 25, 2017.

s/ William C. Lee
William C. Lee, Judge
United States District Court
